So, Ms. Watson, can we call our case this afternoon? 16-0640, People v. Cordell, Bass. All right, will Council on People v. Bass please approach? Tell us who you are and who you represent, please. Good afternoon, Your Honors. Chris Bendick from the Office of the State Appellate Defender in relief of Brian Josias, who did the briefs in this case. He's on leave right now. Okay. Assistant State Attorney Tasha Marie Kelly on behalf of the People. And Mr. Bendick, before you sit down, how much time do you want? 15 minutes. Okay. All right. And Ms. Kelly, is 15 minutes all right with you? Yes, ma'am. All right. Mr. Bendick, whenever you're ready. May it please the Court, good afternoon, Your Honors, Council. My name is Chris Bendick from the Office of the State Appellate Defender. I represent Cordell, Bass. With this Court's permission, my plan is to focus on the Fourth Amendment issues in the briefs. We can answer any of the other issues, any questions you may have on those issues. What began as a lawful seizure of the car Cordell, Bass was a passenger in, became an illegal one when the officers expanded the scope of the traffic stop and decided to obtain the IDs of the passengers and run those identifications through the background system. Because these actions prolonged the duration of the stop and deviated from its initial purpose, absent any reasonable suspicion, the officers violated Cordell, Bass' Fourth Amendment rights. Don't go ahead. Go ahead. Tell me how it prolonged the stop factually. Just so the record knows, that was my question. So the purpose of the stop was a red light violation and went up to the side of the car, questioned the driver, who I'm not even sure whose driver's name is, frankly. And we're going to issue a verbal warning and a TS card, a traffic stop card. That was going to be it. Now they pulled the passengers out of the car for officer safety. That's allowed. But it added time to the stop as soon as they both got identification from all of the But tell me where in the record that is. See, I understand that's your argument, but reading the transcript, I don't see what order anything was done in, whether Mr. Bass was first or last, whether they were running these all together. What's the factual support for the argument that it extended the lawful stop? Well, what we know from Rodriguez v. The United States is any time added to the stop is a constitutional violation if it's not connected to any of the ordinary traffic stop, like running a driver's license here. Now since the burden shifted, since the defendant presented a prima facie case, any deficiencies in the proof as to the timing is against the state because they're the ones that have to justify to this court and to the trial court as to why there was not a constitutional violation here. So is the burden of proof determinative? If the defendant had the burden of proof to show that the lawful stop was unnecessarily prolonged, then he loses. If it's the state that has the burden of proof to show that it wasn't unnecessarily prolonged, then the state loses. Is it determinative? Regarding who has the burden, correct. That it would determine whether there's a violation. Based on this record, however, we know that time had to have been added to the stop because the initial purposes, we always look at what the initial purpose was of the stop. Here it was the red light violation. Anything that occurs adding time to that has to either be tied to the initial missing or has to have a connection to some reasonable suspicion of criminal activity. So when would looking at driver's license notification of passengers not extend the time? That is, if you're concerned with the driver and what the driver did, when does, wouldn't it always be the case then from your argument that when you ask passengers, particularly a car with many passengers, for their identification, you're going to prolong it? Yes. So there should be a rule? Are you saying that it's kind of, the mere fact of asking for passenger identification would necessarily elongate a traffic stop? Unless at some point, somehow you're able to, there's some like dual system in a car, I don't know if you have maybe two cars, right? And you have the initial officer who's conducting the normal connection to the original traffic stop, running the red light violation ticket, writing that out, and at the same time concurrently, a second officer is doing that check. So here we're sure that one officer was standing with the passengers on the side of the car while the other officer went into the squad car to do the checks. Is that what the record reflects? That's what, that's how I conclude from the record. What happened here was that one officer pulled all the passengers out and after the driver had been pulled out, and then one officer supposedly ran all their identifications. So there wasn't any reason to believe that the passengers were breaking the law. They were in a car that had tinted windows in the back seat. The back seat windows were tinted. But there's no law against that. The front seat windows and the driver's window can't be tinted. The back seat window, those can be tinted, right? As far as I understand by the City of Chicago, correct.  You wouldn't see them smoking weed or handling drugs or drug paraphernalia. They had gone nothing like that. So they were just sitting there. They were passengers. And one of them was sitting next to a clear window and one of them was sitting next to a tinted window. So the officers testified that they pulled them out for officer safety. Certainly in terms of the tinted window, one could understand that. But there were two of them. So your argument was even if it was just a couple extra seconds, it took more time to do that than just pulling the driver up and getting his ID or asking for his ID. Correct. And I think Arizona v. Johnson would allow for officer safety to have the passengers go out. That's totally permissible under United States Supreme Court law. Once, however, absent any reasonable suspicion, you perform an act that prolongs the stop at all. Adds any time. That's the very specific language of Rodriguez. It prolongs or adds any time. There's not a de minimis standard. It's one second. Right. That's what Rodriguez stands for. That's what happened here. And the state cannot demonstrate it didn't prolong the stop at all. They wanted to do that. They should have presented that evidence in the trial court. They don't get two bites of the apple. They should have done that below if they're saying this did not prolong the stop because it was their burden once the burden shifted to present that evidence that this was not a constitutional violation. And officer safety is not the same thing as a reasonable suspicion. Correct. Officer safety allows them to pull them out of the car and Actually, they didn't pull them out. They asked them to step out. The other passenger stepped out voluntarily. Again, not fleeing, not giving them a hard time, not mouthing off. Nothing like that. Not pulling guns. Nothing horrible. They just stepped out. When the officers asked them for their ID, they gave them their ID. They didn't bite it. They didn't resist it. They didn't say, no, I'm not doing that. Nothing. They just handed over their IDs. So still no reasonable suspicion. Correct. Okay. So under Rodriguez v. United States, this was unquestionably a constitutional violation. Unfortunately, this wasn't the only constitutional violation by the Fourth Amendment in this case. Before you get to the second one, if Don't worry about the time. It's a habit. If the passengers had resisted giving their identification, what impact would that have on then elongating the stop? I'm just saying, with your argument, I'm trying to think of how else that might affect other cases. What would your answer to that be? Well, in situations like that, so going back to the Arizona v. Johnson situation, a terry pat down there was allowed because there was a fear that the passenger was armed. The third passenger in that case, because of, I think, some gang clothing, where area they were, questionable. I think that a terry pat down should have been allowed in that situation, but it was allowed. And that was fine. If a situation where another passenger, not passed here, but another passenger fled or something, I think that would go to what then the traffic violation was. And that there was sufficient basis to elongate the stop at that point. Because there has to be reasonable suspicion at that point, right? Anything to prolong the initial stop. So at that point, you would have reasonable suspicion. Whatever, they just didn't want to produce, they have a right not to produce their driver's license, right? Correct. The passenger. Correct. I mean, they absolutely would have the right to refuse to give over their identification in that instance. So if you have a right not to do it, then it shouldn't be called prolonging by doing it. It's kind of like what I'm thinking. So in your hypothetical, it denies it, but then it's the question, is the officer then hammering and haranguing this person to do that? I mean, that wouldn't be any reasonable suspicion. So then we'd go back to, is it prolonging the stop? And of course it's prolonging the stop. Okay. The officer stopped the driver, asked for identification, gave him a verbal warning, and then wrote up one of those new contact cards, the TSS card, that now takes more time than it used to. It used to be like a ten-second drill, and now it's a couple minutes. That time was built into stopping the car. Do we know whether the other officer added on to any of that time, or was the first officer still doing the contact card, the new contact card, while the second officer was asking the other two people to exit the car? Okay. Maybe it was all part of the same sequence of events for issuing the verbal stopping, getting ID, verbal warning, contact card. It takes a couple minutes. Was it the same time? Was there more time added to it? Do we know? What we know from the record is that they were all pulled out of the vehicle essentially simultaneously. It sounds like the driver, according to Officer Serrano's testimony, officer first and then... Not really pulled out. I'm sorry. Asked to leave, and they asked to step out. Pulled out would be a whole different case. Okay, so they're asked to step out of the car. They do that. While the first officer is doing this now, six-page snapshot TSS form, I think that's what it is. Takes some time. The second officer is getting the IDs of the two passengers. So your argument that it added time to the stop, what happens to that argument? Well, again, it wasn't just the grabbing of the identifications, but that would have added time to the initial stop. Well, they didn't make contact cards for the two passengers, did they? It's from the record that there was no other TSS cards besides the driver. Just for the driver. So while the driver's side officer is filling out the new card, the other officer is running the IDs for the passengers, and they end at the same time, then we haven't prolonged the stop, have we? No, that is correct. If they're both being run concurrently, however... So do we know from this record what happened? Yes, because the state, if it had evidence of that, that it was supposed to be concurrent, and if they wanted to justify the stop based on what you're talking about, it would have presented evidence of it, that it was being done concurrently. But what we have here is they came out of the car, and then everyone's identification was run through, apparently not just a warrant check, but also the investigative alert system. Okay, so we don't know how long that took. That might have taken longer than the TSS card to the driver, but we don't know. Well, no, we know it added time because we know the state did not present evidence that it happened concurrently, like you do in Arizona v. Johnson. That goes back to my question, to the effect that it is the burden of proof that's important here. Who had the burden of proof? Once it shifted, correct, yes. And the state absolutely had that burden to present that evidence. That is clear from the Illinois Supreme Court precedent, that once the burden shifts, they have to provide that evidence in order to provide some justification that this was constitutional. And they can do that by the clocks on the different systems that they use and stuff like that. So it's possible that it exists. It does. I know in certain other cases that they presented the cameras from both squad cars. Or the clocks on the computers that they're checking for the warrants and the investigative alerts. I mean, they all have clocks on them. So theoretically, it's possible. It isn't impossible to have proved that. They didn't prove it, but it is not necessarily impossible for them to have done that. And so Justice Mason is asking, well, whose burden was it? Does the defense have any burden here to say, wait a minute, hold it, hold it? We've subpoenaed these records, and look here. You know, it took longer. Well, if the state presented evidence that it didn't take longer, the defense could, of course, rebut that evidence and say, no, it did extend the time to the staff. But you don't have any evidence to that. You're just saying, yes, it took longer because there were two of these guys, and the police, this one officer, while he's getting the warrants and the investigative alerts and blah, blah, blah for these guys, the two passengers, the TSS card, the verbal warning, the identification process with the driver didn't take that long. What we know from the record is that they all came out of the vehicle. All their identifications were obtained, or at least most of them. It's a little unclear, actually, about the driver. But then everyone was run through the system, whatever being a warrant check system or the investigative alert system. So we know that that added time to just the singular. There was one that, of course, added time in this instance. And I'm not saying that the state couldn't have presented evidence. They didn't. They chose not to. They have to live with what they didn't present below. Is there evidence in the record that there are two systems, a warrant system separate and apart from an investigative alert system for police to check so that whenever you do this type of checking, you have to go through at least those two, if not more? I'm not aware that there's a separated system where the... But you seem to be saying that. So it may not be... What I'm saying is that they didn't just do some sort of... I guess it could be all part of one system where a warrant check would come up or a warrant would come up also at the same time as an investigative alert. I'm unclear on that. From reading the investigative alert six-page order from the municipal CPD, it's too unclear. So going to your second argument, which is... Well, let me go to the second argument. If you prevail on your first argument, do we need to go to the second argument? Should this court find that there was a Fourth Amendment violation as pursuant to the... I assume you're not talking about the sufficiency, but you're talking about the first Fourth Amendment argument. You would not have to, in this instance, go address the investigative alert. Okay. So you had a question about... Well, no, I wanted him to go to the second if we were done with it. Okay. I didn't want him to forget it because I was the one that caused him to detour. I'm sorry. Bass was not obviously arrested on a warrant. He was arrested only on the investigative alert issued by Detective Davis here. The investigative alert system of the Chicago Police Department is unconstitutional. Are you aware of any other system, investigative alert system, in the country? I'm not. Have you looked? I have not. Okay, so you're not. And the Illinois Supreme Court hasn't ruled on its constitutionality yet directly. Correct. And, frankly, I don't think the United States Supreme Court has ever directly addressed this issue either. Taking a look at both the Whitley v. Warden of Wyoming and U.S. v. Hensley, I mean, those are two narrowly tailored decisions. The first one, Whitley, it was an arrest warrant that was basically put on an APB in that state. And that was found to be fine, absent the warrant being deficient in that case. In Hensley, it was a Terry stop. There's not this in between where we have some sort of parallel warrant system in a state or a city that allows 12,000 officers to arrest someone weeks later, absent a warrant, just because one officer said, well, there was probable cause in this instance, without going before a mutual magistrate. Do you dispute that there was probable cause based on the victim's complaint to police? I don't. I don't. I understand that if this court does not rule it unconstitutional, that starts as pretty similar to this case that this court issued. But those investigative alerts are not under oath. The police officers are not swearing under oath that they before anybody, even with a commander, oh, this is why we need to catch this guy. No. Because they would have to do something specific to get a warrant. It's not that specific. The process for getting an investigative alert is, if I could choose a lot of words, maybe loose would be one of them. I think the term is it's a parallel warrant system, absent a neutral magistrate, is how I define it. There's nobody who's impartial. So it's all contained within the police department, and there's nobody impartial saying, wait a minute, let's ask some more questions. Correct. Do you know right offhand if Chicago is the only place that does this? I am unaware of if there is another system like this. I just wondered. I apologize, Your Honor. I can research that if this court is aware of that. I just wondered. Taking the state's position to its logical conclusion here, police departments would be able to set up a national database of investigative alerts where an officer in Montana could arrest someone based on an officer's conclusion in Maine that they had probable cause to arrest someone. I mean, there's just no basis in Fourth Amendment jurisprudence. The United States Supreme Court has never approved such a system where we go outside of the normal warrant requirement. The national database? I'm just saying under the state's rationale here that somehow this is still constitutional, the investigative alert system is constitutional, they would be able to extend this nationally if this were a constitutional procedure. Is this the equivalent of those wanted posters in the Wild West? Absent a warrant, it seems like it. And the United States Supreme Court has never approved under the Fourth Amendment such a procedure. This court should use this case as an opportunity to declare the Chicago Police Department's investigative alert system per se unconstitutional. It's a willful policy of right for abuse and targeted at circumventing the Fourth Amendment. Either of these Fourth Amendment violations here warrant a new trial absent any statements or evidence tied to those violations. Now, when you say you prevail, I know we're never going to make our trip back to Chicago, you prevail, you can't suppress the body of the defendant. So what gets suppressed is his statement, right? The statement he made to police. And we still have the victim and her boyfriend's testimony. Correct. And that does not render this error harmless. It was relied upon, that statement, during the trial court's finding of guilt. I don't know how the state can say that this is harmless given that fact. But we don't – I guess what I'm getting at is you don't say, okay, Mr. Bass, go back out on the street. They're going to have to get an arrest warrant for you and come find you again. We don't do that. We don't suppress the body of the defendant. We suppress his statement. Correct. So the result would be a new trial. A new trial absent any illegally obtained evidence. I don't think we have it in this case, but should a lineup have occurred and identification have occurred in that. But I believe it was a photo array. The police had three weeks to get a warrant? I believe it was 14 days based off, I think it was July 29th to the 13th of August. And they put the investigative alert. I don't even know what they did between the 29th and July when they interviewed the complainant and her boyfriend and then entered the investigative alert in the system on July 31st. And then you've got 14 days from the IA going in to the actual traffic stop. Does this Court have no further questions? We ask for the relief requested in the briefs and reserve the remainder of our time in rebuttal. Okay. Thank you, Your Honors. All right. Ms. Kelly? Again, I'm Assistant State's Attorney Tasha Marie Kelly. So I will turn right to the Fourth Amendment as well unless there's any questions on the court's issue. It's our position that the name check that was conducted on defendant in this case did not prolong the traffic stop. So I'll ask you the same question I asked Mr. Bendick. Whose burden was that to show that it did not prolong the traffic stop? I would agree that at the time that it shifted, it would have shifted to us. Okay. But in looking at the Rodriguez case that counsel has referred to, it's correct that the language in that case is that no time should be added, the stop should not be prolonged. But I think that what this Court needs to look at is what the U.S. Supreme Court was looking at in terms of the parameters of the stop. So in the Rodriguez case itself, there's a traffic stop, there's a name check that's conducted on defendant, and then I believe following that, there's a name check that's conducted on the passenger who's in that car. The thing that concerned the court in what they were referring to when they were referring to prolonging the stop was the dog snap that took place after the entire traffic stop was completed. And that would include the name check of the passenger who was simply in the car with defendant. So if you look at the case in those terms, then what occurred here did not prolong the stop. Well, let me ask specifically, where in the record did it say, well, would you agree that, well, how do we know? Officer Carrero, he conducted a leads check, correct? On defendant? No, well, on the driver. Yes. And do we know when he did that? We don't, do we? I mean, there's nothing in the record that tells us when he did that. It is a little bit unclear. Okay. So my next question is then, the computerized name check of the passengers, it's unclear then too, but it seems to be Carrero did that as well from what we can piece together. Yes. But we don't know what you did first or second, so it could have prolonged it had he done the driver first. Well, I would have two responses to that. So the first thing that I would say is that the officer does testify that he did all of the name checks once everyone was out of the car. So that would suggest that all of the name checks were done at the same time. Well, you can't do them all. Doesn't he have to do one and then? Well, I mean in this like one, two, three. Right. Right. So if they're sequential, then they take time, even if it's just a couple seconds. Correct. But, again, it's our position that that's all a part of the stop. Well, the passengers weren't breaking the law. They didn't run a red light. Neither was the passenger in Rodriguez. Well, and there was nothing that indicated that either of the passengers was doing anything illegal. That's right. That's correct. The other thing that I would point to is the testimony from Officer Carrera that the warning that was given to the driver of the vehicle came last. That's what he said. The warning would have come last. So the warning that was given to the driver of the vehicle would signify the end of the traffic stop. So while in the record it becomes a little bit confusing because it almost looks like the warning came before the name check, he does state that the warning came last, and that's the more logical way to read the record because it would be ridiculous to think he's going to give the warning before he even sees if this person has an outstanding warrant or multiple violations. So looking at the record in that sense, it would seem that the name checks were done during the scope of the traffic stop, which then ended when the verbal warning was given to the driver. So they were arresting the defendant before the verbal warning to the driver? That I can't answer. Isn't that the critical question? Because that would be prolonging if it was afterward. Well, the actual placing of the defendant in custody wouldn't prolong the stop because there's no indication that the traffic stop is over and then they place the defendant in custody. But the fact that when they actually take him into custody, I don't think would make a difference in terms of the question. Once they've established the probable cause for his arrest during the name check. So your general position is that Rodriguez recognizes that as part of a lawful traffic stop, police can get the identification not only of the driver, but of passengers. Can run those name checks and do whatever they're going to do with respect to the traffic violation, and that's okay. It's only when they extend the stop by bringing in a drug sniffing dog that it becomes unconstitutional. Yes. Is that a categorical or does it depend? Our position is that if something occurs once the traffic stop is completed, which unnecessarily prolongs the stop, that would be unconstitutional. And if it's a dog sniff or a pat down of an individual, whatever the case may be, if the traffic stop is completed. What do you mean by traffic stop is completed? I mean, that begs the question. Whatever the decision is of the officer in terms of the traffic violation. So the decision of the officer, there's no factors that the courts look at? Whenever the officer says, I'm done, that means he's done. Well, I believe that what the case law says is when the objective of the traffic stop has been completed. So the objective of the traffic stop here you would say was? To investigate whether the driver of the vehicle in this case should be given a violation. And it was decided that they'd give him a warning. Yes. And so your position here is when that warning was given, that marked the end of the traffic stop? Yes. And do we know whether at that time the officers completed their checks on the passengers from the record? From the record, I would say that the officer's testimony, that the verbal warning came last, shows us that at that point the name checks were complete. In terms of the investigatory alert issue, what occurred here was consistent with what the Highland court stated should occur. The officers in this case made the arrest with full knowledge that there was probable cause for that arrest. Why didn't they get a warrant? They had at least 14 days. You mean the detective? Yes. Because there's a mechanism in place with the Chicago Police Department in the form of an investigatory alert that he chose to use in lieu of a warrant. You have to have a neutral registry to make those decisions. So the police can make those decisions on their own, and they can make that decision and have an investigative alert issued, and then what? It's there forever? I apologize. I'm not entirely sure if there's some kind of time limit with an investigatory alert. But if they have probable cause, then get a warrant. I mean, we have a dual system here where neutral magistrates, which is the purpose of the Constitution is to protect people from just this type of activity where a neutral individual is not making those determinations. If Detective Davis had seen this defendant out on the street with the knowledge that he had, he could have placed that defendant in custody. But he didn't. And there would be no question that that was a valid warrant. That's not our case. This is an investigative alert that a third-party officer received, which could have easily – I mean, you have no basis to tell me why they didn't get a warrant. There's nothing – you can't. So they should be getting warrants. To me, that's what the Constitution provides. There is no case in this State, or to my awareness, in the country, that says that an investigatory alert such as the one that was used here is unconstitutional. Well, maybe the hazard issue hasn't been as ripe as it is in this case in that in the earlier Illinois cases, nobody said, do you have any investigative alerts outside of Chicago? I did look. I was not able to find one, but my research was probably not as extensive. I looked as well. I'm not saying that you and I are the best researchers, but I couldn't find any either. So assuming it's very rare, I think we can say that. So it seems that, particularly in a case like this, if there was evidence for a warrant, they should have presented it, and we wouldn't have had this situation. Why should we have a lesser standard in order to arrest people in the City of Chicago? Because what occurred here is completely consistent with the law that is on the books. No, it is. How can you say that? How can you say that? Because – The reason I say that – I mean, I want to give you – Yeah. Is because there is a process of getting warrants. There is. But there's also case law in this state, such as Highland, such as McGee. But there's probable cause there. It was a different situation. There was probable cause to stop the individual who was a defendant in those cases. In this case, he wasn't a driver. If he was a driver, those cases you are referring to would apply. If he was a driver, there was probable cause to stop because he went through light or whatever. Here, we don't have that. So this is a perfect setup for investigative alerts being used in substitution of warrants. Well, respectfully, I see that you're drawing a distinction between the fact that in those cases, you're talking about the driver of the car and he stopped and there's probable cause. But the fact is that the underlying theme of that case is that if an arrest is made and the arresting officer and if the state can show that there is valid probable cause for that investigatory warrant, which there was in this case, based on the knowledge that Detective Davis had at the time that he sought the investigatory alert, that it's a valid arrest. So what you're saying is it's okay for police officers never to get warrants, but after the fact, if they should have gotten a warrant because they have probable cause, then we're going to say it's okay. So that's the system in Illinois as opposed to other states. Where am I wrong on that? I'm not saying that it may not have been a better practice to get a warrant. I don't know, based on this record, the rationale that they had, but what occurred in this case was not a violation of the Fourth Amendment because there was valid probable cause for an arrest, and that's what is necessary. But we don't know that because nothing was under oath. There was no objective decision-maker about probable cause, which is the normal runoff events. Here we have one cop telling another cop, oh, some witness comes forward, tells a police officer something, that officer writes it all down, gets his commander, captain, whoever's around to sign off on it, and that's it. It never goes outside the chain of command of the police department. It's an internal document. It's an internal process, incidentally, that I cannot find any sanction for in any statute in the state of Illinois. Can you? Does any statute in the state of Illinois say, yes, you can use investigative alerts instead of warrants? I am not aware of one. Well, then maybe the police department is using a process that's, you know, 100 years old that has to be revisited. It's easier. It's faster. I get it. I get why they want to do it, but that doesn't make it right. But it's consistent with what occurs in hundreds of arrests every day. In Chicago. Warrantless arrests. Are you aware of a national database that these investigative alerts go to where other states or other communities are also posting investigative alerts instead of warrants? It's actually my understanding that investigative alerts don't go beyond the city of Chicago. So I'm not aware of any kind of national database where we place our investigative alerts. Would there be a prohibition against doing that? As far as I am aware, investigative alerts are something that the Chicago police use internally for themselves. Would it be fair to say it's a shortcut? When they have three weeks to go get a warrant and they have a willing witness and victim, they could get a warrant. I would say it's an alternate method. I would not say it's a shortcut. I would say that it's something which to date has not been found unconstitutional based on case law. And so the decision that was made by the detective in this case. And what built-in protection is there for any suspect under that system? As there would be in a warrant, for example. What is the protection if the whole Fourth Amendment is to protect people and their rights? What is the corollary protection in an investigative alert? Where is it? The defendant can do what he did here and he can bring a motion to watch the arrest. But he still gets arrested. As would any other individual on a warrantless arrest or with a warrant. He would have the same. But that's different. You said with a warrant. There was no warrant here. No neutral judge, magistrate made a decision. Here we only have the police doing it for whatever reasons they want to do it. No, correct. So this directly puts at issue the Fourth Amendment and its implication as to whether an investigative alert is unconstitutional, as the other side says, de facto unconstitutional or not. If you're saying that it's de facto unconstitutional simply because he's arrested without a magistrate or someone else making the independent determination of probable cause, then you would have to say that every single arrest that takes place on the streets of Chicago without a warrant is unconstitutional. That's not true. Police have to say a probable cause. And so did the detective who issued the investigative alert. Counselor, you have exigent circumstances. A man waving a gun in front of the building, they don't need a warrant to stop that. Here this event happened three weeks in advance, three weeks ago. Plenty of time to get a warrant. Willing victim could go under oath, no problem. Arguably, he could have gotten a warrant. So it might be that there are lots of arrests that do not meet the standard of the Fourth Amendment because the police department is using an outmoded method. And that may be the case, but it's not the case in this situation. There's no question in this case that there was valid probable cause. I mean, you heard counsel state the same thing during his argument. There was valid probable cause for arrest. It would have been probable cause if he had been the driver. No problem with that because that would have been a regular stop that went on to find out that there was a problem and it's a different scenario. He's sitting in a car. He's not doing anything. The police officer did not testify that he saw him doing anything illegal. He's sitting in a car. That's it. But the information that was contained in the investigative alert was valid probable cause for his arrest. The question is whether the investigative alert should have even been there, whether it even should exist, whether it's even appropriate without the checks and balances that are required under the Fourth Amendment to protect people from illegal seizures. And our position would be, based on the case law and the rationale behind the cases that have been decided, acknowledging your distinction about the fact that the defendant was not the driver in this case, that the arrest in this case was validly made on the investigative alert, which there's clear evidence in the record both at the hearing on the motion and at the trial that the detective had valid probable cause at the time he issued the alert. So let's assume the police went out and got a warrant when the victim came in. How would Mr. Bass's position be any different? Because he'd still be the passenger in the car. The police would get him out of the car. They'd run a name check. And instead of seeing this investigative alert that laid out all the information the police had, they just see that there's a warrant out for his arrest for criminal sexual abuse. Is he any worse off because of this investigative alert? He's not. And, in fact, the investigative alert contains as much, if not more, information as a warrant would. The warrant was just going to say there's a warrant out for his arrest for this offense, period. Correct. But the big difference is that a neutral magistrate signed the warrant. We don't have that here. We don't have that protection here. And that's really what we're talking about is that Fourth Amendment protection. So I see a big difference between those two scenarios that we just discussed. Why have investigative alerts, period? Since you do have police have warrants available to them, why do we need investigative alerts? What's the reason? There's a rationale in this day and age where you can go to your car and check in a matter of seconds for a warrant. Why do we have investigative alerts? What's justification? I hesitate to say expediency. Certainly you could get in a situation like this, you could get the investigative alert out there faster. When you, as a seasoned detective, know that you have enough information for probable cause and you want to get the alert out there as quickly as possible so that you can get this individual off the streets faster. This took 14 days. I mean, in that time they could have gotten a warrant. And so, you know, expediency time, I mean, this is not a situation where somebody is dangerous walking the streets. You know, there are many dangerous, there could be dangerous people where you want to do it immediately. This isn't one of those cases. I mean, beside expediency, which I, so you don't have to go before a judge because there's a national emergency, you know, maybe that happens once in a blue moon, but. Well, again, I don't know what the reason was in this case. It doesn't matter. Absolutely any investigative alert, if you're saying that they have the same probable cause as a warrant, then we don't need to have this school system where you keep the judiciary, the neutral protector of citizens' rights outside of the protections. This is police action without judicial interference. Which has never been found in the Constitution. It's never been tested like it may be in this case. So that's why I'm asking you the question. I'm more worried about the safeguards in the investigative alert process. In a warrant process, you have somebody who comes in under oath and testifies in front of a judge for this warrant. Nothing like that happens. And say some people take being under oath seriously and some people don't. I don't know what the percentage is. Maybe it's 50%, maybe it's 1%. But there is a certain sanctity, a certain seriousness, a certain commitment to be telling the truth when somebody says, do you swear this under oath? Maybe you just have a witness comes in, says something to a police officer. The police officer writes down everything they say. There's no oath involved. There's no swearing involved. There's nothing involved. It's like a game of post office almost. She said this, I'm saying this, blah, blah, blah. I'm telling my captain, I'm telling my sergeant what happened. This internal process that has no checks and balances, which is what the Fourth Amendment guarantees, is just totally missing. So how can that be a valid process? Just because it's faster? No, it's a valid process in the same way that it is when any officer in his sworn duty makes the decision that there's probable cause to make an arrest. But if they see something criminal going on, nobody saw this happening. But if you have a citizen who comes up to a police officer on the street and says, that man in the red shirt just robbed me, there would be valid probable cause to make that warrantless arrest. And there's no difference between an on-street arrest based on a statement by a citizen who tells a police officer something, and that police officer makes the determination that there is valid probable cause for him to arrest that person. It's the same as that person coming into the police officer's station telling him, this person did this to me, and him making the decision that there's probable cause. As far as I'm aware, and correct me if I'm wrong, warrants are issued on affidavits sworn. Right? You're not bringing in witnesses to testify before the magistrate, unless it's a confidential informant. Confidential informants sometimes come in before magistrates. But if a police officer takes a complaint from a citizen about a battery or whatever, a police officer fills out the affidavit, and that's the basis for the warrant, right? Right. And that's what I was referring to when you have an individual who tells the police officer about something that happened to them, and then it's the police officer who's making that determination about probable cause. So it's the same situation. It's not the police officer. It's a judge or a magistrate. There's one more step. That step is missing in this process. Correct. But it's the same situation as a warrantless arrest based on probable cause. So if there's nothing further, as to the first issue, we would stand on our briefs, and we would ask this court to affirm the decision of the lower court. Thank you. Thank you. Mr. Bendick? Just briefly, Your Honors. To address the State's position that Rodriguez allows them to run the IDs of every passenger in a car, every traffic stop, it simply has no basis in Rodriguez. I mean, Rodriguez does not say that. Specifically, Rodriguez addresses that the typical inquiries of a traffic stop for the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the vehicle. In Rodriguez, the passengers were also asked for their IDs, right? I believe that's Harris where the identification was requested, and there's three reasons why we're not controlled by Harris here. One, Harris occurred seven years before Rodriguez, so it's constitutionally suspect at this point. Two, the defendant there did not make the argument that we're making here about the prolonging of the stop. There, the defendant challenged the running of the identifications that the warrant was a seizure, warrant check was a seizure, or that the obtaining of the ID was an unlawful seizure. And three, the running of the passenger's ID there was connected to the mission of the traffic stop, because guess what was happening? The driver was getting arrested because he didn't have a license, and so the officer asked for the identification because he was going to let the passenger drive the car away, and the officer testified, I allowed him to do that every traffic stop like this where I'm going to arrest the driver. So that's three reasons why we're not like Harris. And Rodriguez specifically said that when the police, when the action is, police have to be outside of the normal inquiries. It doesn't matter whether that occurs before or after a ticket is issued. It's whether at any time, and addressing the dissent in that case, you know, the dissent went about some sort of de minimis approach. There is no de minimis approach here. One second is all you need if it adds to the initial stop. But you conceded they can ask the passengers in this case to get out of the car, correct? Yes. And they could ask them for their license, which they can give or not give. Here they gave them. And what do you think the state argues? Well, the officer testified that when I told the driver I'm not giving you, I'm giving you a warning and that you're allowed to leave, that was the end of it. So that was the end of the stop. So if you accept that, then the stop ended right when it should have ended. The stop was prolonged and time was added by, absent reasonable suspicion, obtaining the identification from all the passengers. So you think they're allowed to do that if the passengers voluntarily gave them their license? They can do that. No, they cannot, unless it is tied to the traffic stop and does not add any time to the stop. And it did add time to the stop. Well, the officer on the driver's side is filling out the TSS card. The officer on the passenger's side runs Mr. Bass through the system and finds the investigative alert. And that's done before the TSS card is filled out. How does it prolong the stop? If the state's evidence below actually demonstrated that? Assume it did. If it did, I would agree. If it did not prolong or add any time to the stop, then we're not like Rodriguez. But Rodriguez specifically says any time added. And the state's evidence below doesn't demonstrate what you just said. It says all these IDs were run concurrently, essentially. So of course it added time. It wasn't concurrently, it was added after each other. And so we don't have that situation, like the Arizona v. Johnson situation where you had one of the officers talking to the driver, while at the same time the third officer is talking to the backseat passenger and does the tear it back down. You don't have that here. The state chose not to present that evidence. They should have. They had it. I don't think they had that evidence. They didn't present it, but they did it. So is it your position that if we agree with you that it did add time to the stop? You win. Is it your position that we should not address the other Fourth Amendment claim with regard to the investitory alert? No, I asked it. I know you did, and I'm asking it again, because I want to make sure that the question is presented in that format. I'm re-asking the question. Exactly. I think should the state, should we win on the first issue, assuming the state were to challenge this further, I think another basis for a Fourth Amendment violation should be addressed, which would be the per se unconstitutionality of the investigative alert system. So what you're saying is we should address both issues since both issues were raised. Yes. That's your response, which is a different response. If you win on the first issue, how is addressing investigative alerts, anything other than advisory? Because in this case it would be, again, an unconstitutional seizure, and so those would both be basis for a Fourth Amendment violation. Right. So if one was. . . We don't address constitutional issues unless we have to. But both are constitutional issues regarding the same stop. And so I think both would be right to be addressed. What you're also saying is if we first went after and asked ourselves the second Fourth Amendment issue, which has to do with the investigative alert, because that's what started this whole thing, rather than the other having to do with the prolonging, you would say, well, we could do the first issue, we'd be done, and we didn't need to do the second. So you better do both. Well, if you guys found that it was per se unconstitutional, then you wouldn't have to address the first issue. It depends on which one you go first, which you could do, and either one could come first here. Is that what you're saying, that either one could come first? Yes. In regards to the investigative alert, I just wanted to. . . basically says they can renew these. And there's no time where it's reviewed monthly, it sounds like, and then it can go in perpetuity. There's no saying these investigative alerts end after a month or two months or whatever. They can go as long as until they're canceled. And there, again, is no United States Supreme Court decision that allows this system, this investigative alert system in the city of Chicago, as far as that I know of. Anything else? Thank you, Your Honors. Thank you. Thank you both for your briefs and the very interesting issues that you've given us to decide. We will take the matter under advisement, and the Court will stand in recess.